IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION


HERITAGE CONSTRUCTORS, INC.,                          PLAINTIFF

        V.                      Civ. No. 06-2183

CITY OF GREENWOOD, ARKANSAS;
GARRY CAMPBELL, ROD POWELL,
DAVID PURIFOY, WAYNE LOWE,
DANIEL MCDANIEL, JERRY CARTER
and PAUL RUSH                                         DEFENDANTS


### MEMORANDUM OPINION AND ORDER

This case involves an allegation of retaliation by the low bidder on a government construction contract where the next to the lowest bidder was awarded the contract.  Before the Court are the Defendants' Motion for Summary Judgment (Doc. 18) and Brief in Support (Doc. 19), Plaintiff's Response (Doc. 23), and Defendants' Reply (Doc. 24).   The Court concludes there is no genuine issue of material fact in dispute and the Defendants are entitled to a judgment as a matter of law and qualified immunity individually. Accordingly, the Defendant's Motion for Summary Judgment is **GRANTED**.

### A.   Background

On July 5, 2005, the Defendants refused to award Plaintiff a contract to expand a water treatment plant owned and operated by Separate Defendant, the City of Greenwood ("City"), although Plaintiff was the lowest bidder.  Instead,

**AO72A**
**(Rev. 8/82)**

the City Council unanimously voted to award the contract to the second lowest bidder, Kirby Specialties.  On October 20, 2006, the Plaintiff filed this action alleging the rejection of the low bid was in retaliation for Plaintiff's initiation of an arbitration proceeding against the City in 2000.  In that proceeding, the Plaintiff unsuccessfully sought to recover additional compensation for a 1999 construction contract ("1999 project") performed for the City.  It is undisputed that on June 19, 2001, Larry Stone from NRS Engineers, the engineering firm contracted by the City to oversee the 1999 project, wrote City Attorney Mike Hamby and stated that the principal shareholder of Heritage had stated "half-truths" and "tilted facts" in a letter sent from the shareholder to the City on June 11, 2001, in support of Heritage's request for extra compensation under the 1999 project contract.  In correspondence dated June 13, 2001, Larry Stone on behalf of NRS, advised the City Attorney to not pay Heritage the extra compensation requested.  The matter was eventually arbitrated in favor of the City.  The arbitrator concluded that Heritage had not performed the contract as originally agreed and was not entitled to additional compensation.

    In 2005, the City solicited bids for water treatment plant improvements as required by law.  The information stated

-2-

in part "...award will be made to the lowest, responsible bidder.  However, the Owner reserves the right to reject any and all bids and to waive any irregularities as may be deemed best and in the Owner's interest."   The majority of the City Council members who voted on the 2005 contract award were not involved with the City government during the 2001 arbitration. On July 5, 2005, Mayor Campbell conveyed to the Council the recommendation of NRS that the contract be awarded to Kirby Specialties.  NRS Engineer Rice was present at the Council meeting to answer questions or address issues which might arise.  There was no mention of the 2001 arbitration during the Council meeting.  Following the award of the contract to Kirby Specialties, the Plaintiff's counsel inquired as to the reasons Heritage was not awarded the contract as the low bidder.  The City Attorney stated in a letter that Heritage was not the lowest, *responsible* bidder on the project because of "the City's adverse past experience with Heritage and specifically their defective performance thereon, plus extended litigation concerning the same, which was all determined in favor of the City...".

The Plaintiff claims it had a constitutional right to institute the arbitration proceedings pursuant to the First Amendment of the United States Constitution and that the City's refusal to award the contract to the Plaintiff was

AO72A
(Rev. 8/82)

retaliation which is actionable under 42 U.S.C. § 1983.  On October 5, 2007, the Defendants filed a motion for summary judgment alleging no genuine issue as to any material fact exists and the Defendants are entitled to judgment as a matter of law and to absolute and qualified immunity in their individual capacities.

**B.    Standard of Review**

In determining whether summary judgment is appropriate, the Court must view the facts and make inferences in the light most favorable to the non-moving party.  *See Rabushka v. Crane Co.*, 122 F.3d 559 (8th Cir. 1997).  The moving party bears the burden of establishing the absence of issues of material fact in the record and of establishing that it is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 316 (1986).  To defeat a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and designate specific facts showing a genuine issue of material fact for trial.  *Id*. at 324.  Thus, the "basic inquiry" for purposes of summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one sided that one party must prevail as a matter of law." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372 (8th Cir. 1996)(citation omitted).

**AO72A
(Rev. 8/82)**

## C.    Discussion

The Defendants advance several arguments to demonstrate there are no genuine issue of material fact in dispute and that Defendants are entitled to a judgment as a matter of law and absolute and qualified immunity in their individual capacities.  Initially, the Defendants argue the United States Supreme Court has refused to recognize a First Amendment retaliation claim by a disappointed bidder on a new government contract.  The Defendants then contend that even if this Court recognizes the Plaintiff's claim, it should fail because the Plaintiff has not alleged that the petitioning activity, *i.e.*, the arbitration, was a matter of "public concern" as required to initiate a First Amendment retaliation claim.  Further, the Defendants contend that even assuming the arbitration involved a matter of public concern, the City's interest in giving the contract to the second lowest bidder outweighed any interest the Plaintiff might have had in instituting the previous arbitration; the Council's vote to employ another contractor was not in retaliation for Plaintiff's prior arbitration; and there is sufficient evidence that the Council would have made the same decision, absent the prior arbitration.  Finally, the Defendants argue that the Defendants, named in their individual capacities, are entitled to absolute legislative immunity because the award of the contract was a legislative

-5-

function, and qualified immunity because there is no clearly
established law extending First Amendment retaliation
protection to disappointed bidders on new government contracts
and therefore, the Defendants did not violate clearly
established statutory or constitutional rights of which a
reasonable person would have known.

The Court will first address the Defendants' qualified
immunity argument.  Qualified immunity shields government
officials performing discretionary functions from liability
for civil damages insofar as their conduct does not violate
clearly established statutory or constitutional rights of
which a reasonable person would have known.  *Harlow v.
Fitzgerald,* 457 U.S. 800, 818 (1982).  The analysis for
qualified immunity first requires a Court to determine whether
a constitutional right was violated.  *Saucier v. Katz,* 533
U.S. 194, 200 (2001).  If there is no constitutional right
violation, the analysis ends and the official is entitled to
qualified immunity.  *Id.* at 201.  Since the Plaintiff has
failed to properly state a claim for First Amendment
retaliation, the Court finds the City's award of the contract
to the second lowest bidder was not unconstitutional and
therefore, the individual Defendants are entitled to qualified
immunity.  Having determined that the individual Defendants
are entitled to qualified immunity, the Court will not reach

AO72A
(Rev. 8/82)

the Defendants' legislative immunity argument.

The Defendants contend the Supreme Court explicitly refused to recognize the validity of a First Amendment retaliation lawsuit by a disappointed bidder on a new government contract in *Board of County Commissioners v. Umbehr,* 518 U.S. 668, 673 (1996).  In *Umbehr,* the Court held independent contractors with the government are sometimes protected against retaliation based on First Amendment protected activity and the same retaliation analysis applies to such contractors as with government employees, *i.e.,* *Connick's* "public concern" test, *Pickering's* "balancing" test, and *Mt. Healthy's* "same decision" test.  *Id.* at 673. Specifically, the Court recognized a retaliation claim in the case of an independent contractor with a pre-existing commercial relationship with the government, but it did not address suits by bidders or applicants for new government contracts, as is the case here.  *Id.* at 674.  The Defendants contend that by declining to address the issue in *Umbehr,* the Court has refused to recognize such suits.  This Court does not agree.

Although the Eighth Circuit has not addressed this issue, the Court finds support in the reasoning of the Fifth Circuit in recognizing such suits.  In *Oscar,* the Fifth Circuit held that since First Amendment rights have been afforded to

-7-

individuals applying for employment with the government, no different result should be afforded to bidders applying for "employment" with the government under a bidding arrangement. *Oscar Renda Contracting, Inc. v. City of Lubbock Texas*, 463 F.3d 378, 385 (5th Cir. 2006). The Supreme Court has previously held that a government entity's refusal to hire an employee for engaging in protected activity supports a claim for First Amendment retaliation. *Rutan v. Republican Party of Illinois,* 497 U.S. 62, 74 (1990). Later, the Supreme Court extended the same First Amendment protection enjoyed by employees to contractors dealing with a governmental entity. *Board of County of Commissioners v. Umbehr,* 518 U.S. 668, 677 (1996). The Court rejected the argument that independent contractors should not be afforded First Amendment rights along with the public employees. *Id.* at 676*.* In *Umbehr,* the Supreme Court explained: "The similarities between government employees and government contractors with respect to the [First Amendment] is obvious. The government needs to be free to terminate both employees and contractors... to improve the efficiency, efficacy, and responsiveness of service to the public." *Id.* at 674. The Court utilized the *Pickering* "balancing" test to accommodate the differences between employees and contractors and to determine the extent of First Amendment protection that would be afforded to contractors.

-8-

*Id.* at 678-79.  Since the underlying lawsuit involved a contractor's loss of an existing contract, the Court reserved the question of whether an independent contractor with no pre-existing commercial relationship would be permitted to assert a First Amendment retaliation claim.  *Id.* at 686.  In reviewing both *Umbehr* and *Rutan*, we find an independent contractor bidding on a new contract, like an individual employment applicant, is protected by the First Amendment if its bid is rejected in retaliation for the exercise of protected activity.  Failure by this Court to recognize the right of independent contractors to be free from retaliation for exercising their First Amendment rights would diminish the holding in *Umbehr*.

The Defendants further contend that the Plaintiff's claim fails to prove the petitioning activity, i.e., the arbitration, was a matter of "public concern" to initiate a First Amendment retaliation claim.  The Plaintiff argues that the "public concern" requirement is inapplicable in this case. The Eighth Circuit has previously recognized that "the right to petition is cut from the same cloth as the other guarantees of the First Amendment."  *Hoffman v. Mayor, Councilmen and Citizens of the City of Liberty,* 905 F.2d 229, 233 (8th Cir. 1990).  The right to free speech and the right to petition are analyzed in the same way.  *Id.* at 233.  In *Umbehr,* the Supreme

AO72A
(Rev. 8/82)

Court held that a First Amendment retaliation claim by an independent contractor is analyzed the same as a claim by a government employee because of the similarities between government employees and government contractors.   518 U.S. 668, 677 (1996).  The Court analyzed the claim by applying the *Pickering* "balance" test, the *Connick* "public concern" inquiry, the *Mt. Healthy* "same-decision test", and the considerations noted in *Waters v. Churchill,* 511 U.S. 661 (1994).  The Plaintiff attempts to distinguish its case from *Umbehr* because the claim before this Court is not based on the termination of a pre-existing contract as in *Umbehr.*

The Defendants rely on *Hoffman* as Eighth Circuit precedent in this case.  *Hoffman v. Mayor, Councilmen and Citizens of the City of Liberty*, 905 F.2d 229, 233 (8th Cir. 1990).  In *Hoffman,* a former public employee filed a grievance appealing his dismissal.  The Grievance Review Board found in his favor and he was re-hired into another position by the government.   The employee then filed a First Amendment retaliation claim alleging the government retaliated against him for filing the grievance by re-hiring him at a lower position and altering his work conditions.  The court granted summary judgment to the government because the employee failed to argue that his speech was a matter of public concern thereby making it protected activity under the First

-10-

Amendment.  The Defendants cite additional cases in the Second and Seventh Circuit with holdings similar to *Hoffman.*  The Plaintiff argues the Defendants' reliance on those cases is misplaced because those cases all involved public employee plaintiffs.  The Plaintiff asks this Court to not consider cases that involve public employees.

The Plaintiff cites *Gable v. Lewis,* in which the Sixth Circuit held that a First Amendment right to petition claim does not require that the protected activity in question be a matter of public concern.  201 F.3d 769, 773 (6th Cir. 2000). In *Gable,* the court relied on *California Transport v. Trucking Unlimited,* where the Supreme Court included within the scope of the petition clause complaints "respecting resolution of their [petitioners'] business and economic interests..."  404 U.S. 508, 511 (1972).  The court in *Gable* found that *California Transport* extended First Amendment protection to cases involving private business interests which do not touch upon matters of public concern.  The court also found that the reason for the "public concern" test in *Connick,* which is stated was to maintain order and avoid disruption in the government workplace, did not apply because the Plaintiff was not a government employee.

The Plaintiff cites other cases in which the Eighth Circuit did not apply the "public concern" test including

-11-

prisoner cases, as well as *Harrison v. Springdale Water &*
*Sewer Commission,* 780 F.2d 1422, 1428 (8th Cir. 1986)*,* a case
which involved a private citizen landowner and his city
government.   The Plaintiff admits that *Hoffman* applies the
"public concern" test but argues that its holding should be
considered in light of *California Transport,* the Eighth
Circuit prisoner cases and the *Harrison* case which all hold
that the "public concern" test is inapplicable*.*  The Plaintiff
contends that the only viable distinction between those
holdings is that *Hoffman* involved a public employee and the
others did not.   This Court agrees that cases which involve
public employees are distinct from those which do not.
However, the Supreme Court only extended First Amendment
retaliation protection to  government contractors because of
the similarities between public employees and government
contractors.

        The Plaintiff asks this Court to rely on case law which
extends First Amendment protection to government contractors
under the same premise as public employees, but not to apply
the same analysis.   Specifically, in response to Defendants'
motion for summary judgment, the Plaintiff cites *Oscar Renda*
*Contracting, Inc. v. City of Lubbock, Texas,* 463 F.3d 378 (5th
Cir. 2006), for its holding that a contractor without a pre-
existing contract has standing to state a First Amendment

-12-

retaliation claim.  The court in *Oscar Renda* applied the *Connick* "public concern" test because of the similarities between public employees and government contractors.  At the heart of this dispute is the arbitration proceeding which occurred as a result of a disagreement between the government and the Plaintiff while the Plaintiff was in the so-called "employ" of the government.  Since First Amendment retaliation protection has been extended to the Plaintiff, a government contractor, because of the similarities between a government contractor and a public employee, this Court will analyze the Plaintiff's claim using the analysis of claims of public employees of the government.  Therefore, the *Connick* "public concern" inquiry, the *Pickering* "balance" test, the *Mt. Healthy* "same-decision" test, and the considerations noted in *Waters v. Churchill* will apply to the Plaintiff's claim.

In *Hoffman,* the Eighth Circuit held that in order to maintain a First Amendment retaliation claim, a public employee must establish that: (1) he or she did something which was speech addressing a public concern, thereby making it protected activity, and (2) the protected activity was a substantial and motivating factor in the government's action against the employee.  *Hoffman v. Mayor, Councilmen and Citizens of the City of Liberty,* 905 F.2d 229, 233 (8th Cir. 1990).  If the employee establishes these elements, the burden

-13-

then shifts to the government to show it would have taken the same action absent the protected activity. *Id*.  In the case before this Court, the Plaintiff has not alleged the activity in question, *i.e.,* the arbitration, touched upon a matter of public concern as required for entitlement to First Amendment protection.  Instead, the Plaintiff argues that the *Connick* "public concern" test is inapplicable.

The threshold question is whether the activity at issue is a matter of public concern or a private business interest. To determine whether the activity is a matter of public concern, the court looks to the content, form, and context of the speech.  *Id*.  In order for speech to be considered a matter of public concern, it must relate to some "matter of political, social or other concern to the community." *Sparr v. Ward,* 306 F.3d 589, 594 (8th Cir. 2002).  In *Sparr,* the Eighth Circuit said:

> Unless the employee is speaking as a concerned citizen, and not just as an employee, the speech does not fall under the protection of the First Amendment.  It is not enough that the topic of an employee's speech is one in which the public might have an interest.  We must determine whether the purpose of the speech was to raise issues of public concern or to further the employee's private interests.

The court found that dealing with a public entity in a public forum was not enough to convert the employee's activity into a matter of public concern.  *Id.* at 589.  In *Hoffman,* a case

-14-

in which the Plaintiff prosecuted a grievance complaint as a result of his termination by the city, the Eighth Circuit found no action on the part of the Plaintiff that could be considered a matter of public concern.  The court concluded that neither the filing of the grievance, nor the public hearing amounted to a matter of public concern. Specifically, the court held that the activity was "wholly personal" to the Plaintiff.  *Id.* at 233.

The Plaintiff has not alleged the activity was a matter of public concern.  The activity was an arbitration proceeding that occurred between the Plaintiff and Defendant City in 2000 over a dispute concerning Plaintiff's request for additional compensation on a contract performed for the City.   The Plaintiff's principal shareholder admitted the arbitration related to the financial self-interest of Heritage in seeking extra compensation for the corporation.  *See* Exh. C, p. 113:10-17 (Doc. 20).  The Court looks at the content, form, and context of the activity in deciding whether it is a matter of public concern.  The content is a request for additional compensation on a contract, the form is an arbitration proceeding, and the context is the desire for extra compensation to fulfill the self-interests of Heritage.  In considering these factors, the Court finds that the arbitration was personal to the self-interest of Heritage and

-15-

AO72A
(Rev. 8/82)

not a matter of public concern.  The Supreme Court has established guidelines to determine the extent of permissible government regulation of speech under the First Amendment. The Court balances the interest of the employee, in his role as a citizen, in commenting on matters of public concern against the interest of the government, in its role as an employer, in promoting the efficiency of the services it performs through its employees.  To extend protection to activities involving business and self-interest matters would diminish the Supreme Court's holding which extends First Amendment retaliation protection to public employees and government contractors with regard to activity involving matters of public concern.  The Court concludes that the Plaintiff initiated the arbitration at issue to resolve a private financial interest and not a matter of public concern as required to establish a claim for retaliation under the First Amendment.

Accordingly, the Defendants' motion for summary judgment is **GRANTED** and the Plaintiff's complaint is dismissed with prejudice.

IT IS SO ORDERED on this 18th day of January, 2008.

/s/ Robert T. Dawson
Honorable Robert T. Dawson
United States District Judge

-16-